MASSACHUSETTS GENERAL HOSPITAL *vs.* RATE SETTING COMMISSION & another.[1]

Suffolk. February 5, 1971. — April 2, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, & BRAUCHER, JJ.

*Hospital. Public Welfare. Medicaid. Regulation. Equity Jurisdiction,*
    *Declaratory relief. Moot Question.*

A "provider" of hospital inpatient care under Medicare, Title XVIII of the Social Security Act, under Medicaid, Title XIX of that act, and under G. L. c. 118E, was entitled to a review in equity under G. L. c. 30A, § 7, and c. 231A of a general regulation promulgated by

---

[1] The Commissioner of the Department of Public Welfare (the commissioner).

the Rate Setting Commission under G. L. c. 7, § 30L, as appearing in St. 1968, c. 492, § 3, setting out the method of determination of particular rates of reimbursement to be paid by governmental units for Medicaid care of publicly-aided patients furnished by particular hospitals, which regulation the plaintiff alleged did not comply with the applicable principles of reimbursement set out in detail in Federal regulations and would operate to the detriment of the plaintiff and other "provider" hospitals; a demurrer to the bill based on the grounds that the plaintiff's exclusive remedy was under G. L. c. 7, § 30O, and that it had not exhausted such remedy was erroneously sustained since § 30O deals only with a review concerning particular rates of reimbursement of particular "providers" and does not apply to a general regulation. [164-165, 166]

The fact that a hospital obtained a satisfactory adjustment of a particular rate of reimbursement for Medicaid care provided by it, set by the Rate Setting Commission under G. L. c. 7, § 30L, as appearing in St. 1968, c. 492, § 3, did not preclude the hospital on the ground of mootness from obtaining a review in equity under G. L. c. 30A, § 7, and c. 231A of a general regulation of the commission remaining in effect and prescribing methods of setting rates applicable to all "providers" of Medicaid care. [167-168]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on March 12, 1970.

Upon transfer to the Superior Court, the suit was heard by *Lurie*, J., on demurrer.

*Albert G. Tierney, Jr.* (*Daniel I. Cronin, Jr.,* with him) for the plaintiff.

*Harry P. Haveles,* Special Assistant Attorney General, for the defendants.

CUTTER, J. The plaintiff (M.G.H.) seeks declaratory relief (see G. L. c. 30A, § 7, and c. 231A) concerning certain regulations of the Rate Setting Commission (the commission) established under G. L. c. 7, §§ 30K–30P (as appearing in St. 1968, c. 492, § 3). The defendants filed a demurrer, which was sustained on two grounds, viz. (no. 3) that M.G.H. cannot maintain a bill for declaratory relief under c. 30A, § 7, and c. 231A, because its "exclusive remedy is under" G. L. c. 7, § 30O; and (no. 4) that M.G.H. has not exhausted its "administrative remedies under" § 30O. M.G.H. appealed from the interlocutory decree sustaining the demurrer, and from a final decree dismissing its bill.

Attached to (and referred to in) the bill are the exhibits

listed in the margin.[2] The pertinent allegations of the diffuse bill are summarized below.

(1) M.G.H. is a nonprofit hospital, which brings the bill, for itself and others similarly situated, against the commission and the commissioner. The State Department of Public Welfare (the State department) is the State "agency responsible for the administration of the State [p]lan for . . . Medicaid." By St. 1969, c. 800, § 1, a new chapter, G. L. c. 118E, was enacted, establishing "in conformity with . . . Title XIX of the Social Security Act . . . a program of medical care and assistance for" residents of Massachusetts.

(2) M.G.H. is a "provider" under G. L. c. 118E and c. 7, § 30K, and furnishes inpatient hospital care. Among "the persons receiving hospital care are those who . . . have rights under . . . c. 118E," and 42 U. S. C. (1964, Supp. V, 1970) §§ 1396–1396g (Title XIX), to have part or all of their hospital care paid for as benefits "according to a program popularly known as Medicaid." M.G.H. "expects payment for hospital care from all of its in-patients, whether from the patient individually or . . . under Medicaid" where payment is made on behalf of the patient direct to M.G.H. M.G.H.'s published charges for its services "are established by . . . [the trustees of M.G.H.] annually and from time to time, as necessary, as a result of a detailed and comprehensive budget . . . based upon past operating experience, data, and statistics, as well as the projected operating expenses and income in the oncoming fiscal year. . . .

---

[2] The exhibits attached to the bill include: *Exhibit A*, letter of August 24, 1966, from the office of the Attorney General of the Commonwealth to the Department of Health, Education and Welfare (H.E.W.) transmitting Exhibit B; *Exhibit B*, the so called State Plan for Medical Assistance; *Exhibit C*, Emergency Rules and Regulations No. 70–2 under G. L. c. 7, §§ 30K–30P, governing the determination of rates of payment to be used by all governmental units for inpatient care provided to publicly-aided patients by hospitals, sanatoria and infirmaries, adopted February 18, 1970 (attached to which are the commission's "Publicly Aided Reimbursement Rates" for 134 hospitals throughout the Commonwealth, each with a separately determined rate); *Exhibit D*, certain H.E.W. Regulations, 20 C. F. R. § 405.402 et seq.; *Exhibit E*, excerpts from part 250 of the regulations of H.E.W. on "Administration of Medical Assistance Programs"; *Exhibit F*, letter transmitting agreement of M.G.H. with H.E.W. dated May 27, 1966; *Exhibit G*, letter to M.G.H. from Massachusetts Blue Cross, Inc. concerning "Medicare Interim Rates of Payment" and supporting computations.

[The] budget is designed to produce charges to be used in . . . [that] fiscal year which will be equal to . . . operating expense."

(3) On February 18, 1970, the commission "without regard to any [r]egulations of . . . [H.E.W.] or the law, made regulations for the determination of rates of payment to . . . [M.G.H.] and all other hospital institutions for Medicaid . . . in-patient care under" G. L. c. 7, § 30L. These regulations are set forth in Exhibit C (fn. 2) attached to the bill. They "provide for the determination of a per diem rate of money payment which bears no relationship to the charges for the services furnished a patient [or] the costs of the hospital, and provides for no final settlement for underpayment or overpayment or any of the methods, standards, or procedures which are used and currently employed by . . . [M.G.H.] and . . . [H.E.W.] for the care of Medicare patients."

(4) The State department pays the rates thus established by the commission's regulations (Ex. C.) to M.G.H. and other hospitals for the care of persons entitled to Medicaid.

(5) The bill then proceeds to allege or assert various legal principles in somewhat confused fashion, as follows:

(a) The rights and duties of (i) persons entitled to Medicaid, (ii) the State department, (iii) the commission, and (iv) M.G.H. and all other "provider" hospitals are governed by 42 U. S. C. (1964, Supp. V, 1970) §§ 1396–1396g (Title XIX), the approved State plan (Ex. B, fn. 2), and the H.E.W. regulations (Ex. D, fn. 2).[3] See 45 C. F. R. § 250.30 and 20 C. F. R. §§ 405.401 to 405.454.

(b) General Laws c. 7, § 30L (as appearing in St. 1968, c. 492, § 3; see later amendment by St. 1970, c. 714), requires the commission to establish "fair and reasonable rates of payment to be used by governmental units," which

---

[3] These regulations have been transmitted to us only as attached to the bulky folded original M.G.H. bill. It will be helpful if, under S.J.C. Rule 1:06 (351 Mass. 735), there be no certification (for transmission without reproduction) of documents of this general type without requiring the appealing party to produce at least one legible unfolded copy for our use in a form convenient to consult.

(at least with respect to "the rates to be paid by each governmental unit to providers of health services") are required to "be consistent where applicable with the principles of reimbursement for provider costs in effect from time to time under Title XVIII and Title XIX . . . of the Social Security Act governing reimbursements or grants available to the commonwealth, its departments . . . or political subdivisions for general health supplies, care, services and accommodations." The "principles of reimbursement for provider costs" are found in 20 C. F. R. §§ 405.401 to 405.454 (which cover at least twenty-two to twenty-three closely printed pages).

(c) H.E.W. regulations for Medicaid (Title XIX) are then referred to (somewhat inaccurately) as requiring the Commonwealth to apply (under Title XIX) to "each hospital [also] participating in the Health Insurance for the Aged program under title XVIII of the Social Security Act . . . the same standards, cost reporting period, cost reimbursement principles, and method of cost apportionment currently used in computing reimbursement to such hospital under title XVIII." Reference is made to 45 C. F. R. § 250.30(b).

(6) M.G.H. has an agreement with H.E.W. to provide hospital care to Title XVIII (Medicare) patients and has done so since July 1, 1966. Under this agreement, M.G.H. is paid for care according to H.E.W. regulations describing the principles of reimbursement for provider costs, mentioned above. See 20 C. F. R. §§ 405.401 to 405.454. These principles "provide for a method of payment, cost report forms, cost report periods, and an interim payment consisting of a certain percentage of the charges for the services furnished an individual patient at the time the services are furnished in a current year, a final audit after the close of a current fiscal year, and then a final settlement between . . . [H.E.W.] and the hospital to adjust for underpayment or overpayment based upon the actual cost data of the hospital."

(7) The State plan, submitted by the Commonwealth to H.E.W. and approved by the latter's Secretary in 1966,

provides that the Commonwealth will abide by H.E.W.'s regulations. Because of action by the commission, see next par. (8), and the State department, it is alleged that the State plan (and the regulations under it) now are in violation of H.E.W. regulations.

(8) M.G.H.'s principal complaint is that the commission has made regulations (Ex. C, fn. 2) "for the determination of rates of money payment to . . . [M.G.H.] for the care of Medicaid . . . [i.e. G. L. c. 118E and Title XIX] patients" entirely contrary to the requirements of (a) G. L. c. 7, § 30L (b) H.E.W. regulations, and (c) 42 U. S. C. §§ 1396–1396g, "all of which require, in addition to fair and reasonable rates, that . . . rates must be derived, computed and paid on the same basis as [that on which] the . . . [M.G.H.] is paid and reimbursed under" Medicare (Title XVIII) and the pertinent H.E.W. regulations. See 20 C. F. R. §§ 405.401 to 405.454.

(9) M.G.H. alleges the existence of a controversy between it, on the one hand, and the State department, on the other hand.

It may be that, because of the complexity of the applicable State and Federal statutes and regulations, M.G.H. could not have made allegations of fact, sufficient to be good against demurrer, without a very complete statement of the substance of the statutes and regulations. The statement, unfortunately, is diffuse and somewhat disorderly. Nevertheless, we think the following principal allegations have been set out adequately:

(1) M.G.H. is a "provider" of hospital care under Medicare (Title XVIII) and Medicaid (Title XIX, — and also G. L. c. 118E).

(2) The applicable Federal statutes and regulations and also G. L. c. 7, § 30L, require that M.G.H. as a "provider" be reimbursed by the State department for the care of Medicaid (Title XIX) patients on the same basis as that on which it is entitled to be reimbursed for the care of Medicare (Title XVIII) patients.

(3) The Federal regulations under Title XVIII provide in

great detail principles of reimbursement for provider costs (20 C. F. R. 405.401 to 405.454) on a basis which will give M.G.H. fair reimbursement.

(4) The commission has now prescribed by its Emergency Regulation No. 70–2 (Ex. C — February 18, 1970) a method of reimbursement of M.G.H. and other "provider" hospitals for the Medicaid care of "publicly-aided" patients (Title XIX) which is seriously inconsistent with the applicable Federal regulations under Title XVIII (Medicare).

(5) The commission's regulations, if applied in computing reimbursement rates for M.G.H. and other "provider" hospitals, will operate greatly to their detriment.

1. The trial judge sustained the demurrer on the grounds (a) that M.G.H. was barred from bringing a bill for declaratory relief (G. L. c. 231A) with respect to M.G.H.'s rights under the commission's regulations (Ex. C) because G. L. c. 7, § 30O, provided the exclusive remedy for testing the regulations, and (b) M.G.H. had not exhausted its administrative remedy under § 30O. This necessitates analysis of G. L. c. 7, §§ 30L and 30O, and of the commission's emergency regulations (Ex. C).

General Laws c. 7, § 30L (as appearing in St. 1968, c. 492, § 3; see later amendment by St. 1970, c. 714), provides that the commission shall "determine . . . the rates to be paid by each governmental unit to providers of health services" and that each such unit "shall pay to a provider of health services . . . the rates for general health . . . care, services and accommodations [so] determined." The section then proceeds: "Each rate established by the commission *shall be deemed a regulation and shall be reviewable as hereinafter provided.* The commission shall promulgate *rules and regulations for* the administration of its duties and *the determination of rates* as herein required subject to the procedures prescribed by . . . [c. 30A]. Every rate, classification and other regulation established by the commission *shall be consistent* where applicable *with the principles of reimbursement* for provider costs in effect from time to time under Titles XVIII and XIX of the Social Security Act governing reim-

bursements or grants available to the commonwealth, its departments . . . commissions or political subdivisions for general health supplies, care, services and accommodations" (emphasis supplied). It will be noted that it is only "[e]ach rate" (even if deemed a regulation) which is to "be reviewable as hereinafter provided." On the other hand, "rules and regulations for . . . the determination of rates" are to be promulgated "subject to the procedures prescribed by" c. 30A. General Laws c. 30A, § 7, provides, "Unless an exclusive mode of review is provided by law, judicial review of any regulation may be had through petition for declaratory relief" under c. 231A. We think that nothing in § 30L prescribed "an exclusive mode of review" for a regulation setting out the method of the determination of rates as distinguished from a particular rate (even though characterized as a regulation). The latter (a particular rate) is to "be reviewable as hereinafter provided," an obvious reference to § 30O.

Section 30O (as inserted by St. 1968, c. 492, § 3) provides in part (emphasis supplied): "Any . . . corporation . . . aggrieved by *any rate* established by the commission or by the *failure* of the commission *to set a rate or take other action required by law* and desiring a review thereof, shall, within thirty days after a rate is filed with the secretary of state or may at any time, if there is a failure to determine a rate or take any action required by law, file an appeal with the commission. On appeal the *rate* determined for any provider of service shall be adequate, fair and reasonable as to such provider based, among other things on the costs of such provider. . . . All such hearings shall be *adjudicatory proceedings* conducted in accordance with . . ." c. 30A. Section 30O also provides: "Judicial review by the court shall be governed by . . . [c. 30A, § 14] to the extent not inconsistent with the provisions of this section. Notwithstanding . . . [c. 30A, § 7] this section shall be the exclusive method of review of all *rates*" (emphasis supplied). We think that § 30O deals only with the review of the rates of individual "providers" (or the failure to set such individual

rates or take "other action" with respect thereto) and that the section has no application to *general* regulations prescribing methods of setting rates applicable to all "providers." [4] This is emphasized by the provision that a proceeding under § 30O is to be an adjudicatory proceeding, which in G. L. c. 30A, § 1 (1) is defined as one "in which the legal rights . . . of specifically named persons are required . . . to be determined after opportunity for an agency hearing." Although the fixing of a particular rate, for a particular hospital "provider," satisfies the definition (of an "adjudicatory proceeding"), the promulgation of a generally applicable regulation does not do so.

We now turn to the emergency regulations. They are in two parts which appear to have been promulgated at the same time on February 18, 1970. The first part (six typewritten pages) prescribes "Rules and Regulations under G. L. c. 7, §§ 30K–30P, governing the determination of rates of payment to be used by all governmental units for inpatient care provided to publicly-aided patients by hospitals . . . ." A second part sets rates in dollars and cents for each of a great number of hospitals and is entitled "Publicly Aided Reimbursement Rates — Hospitals." The first paragraph of Exhibit C reads (emphasis supplied), "1. Effective for all inpatient hospital care and services rendered to publicly-aided patients during the period beginning January 1, 1970, and until new rates are promulgated, *rates* of payment shall be determined under the provisions of G. L. c. 7, §§ 30K–30P and in accordance with these . . . regulations." Paragraph 10 provides (emphasis supplied) that any corporation "aggrieved by any *rate* determined according to these . . . regulations" may appeal under § 30O. No method of testing the propriety of the regulations themselves is provided.

There is no indication on the face of the regulations (Ex. C) that there was any effort (in framing them) to com-

---

[4] Section 30O has been enacted since the 1966 decision in *Springfield Hosp.* v. *Commissioner of Pub. Welfare*, 350 Mass. 704, 707, 710–711. That decision, so far as it concerns the *procedure* for judicial review, has no present application.

ply with the Federal regulations, especially those under Title XVIII, or that there is such compliance. Whether Exhibit C in fact complies is a matter which, on demurrer to a bill for declaratory relief, it would be premature for us to consider. Indeed, the determination of that issue (as to which M.G.H. is entitled to a declaration) may depend in part upon evidence concerning the application of the regulations and about Federal administrative policy and practice.

We conclude that, despite the simultaneous promulgation of general regulations and individual "provider" rates, the general regulations are separable and individually reviewable. Since no other method of reviewing their propriety [5] has been provided, M.G.H. may seek review under G. L. c. 30A, § 7, and c. 231A. See *First Agricultural Natl. Bank* v. *State Tax Commn.* 353 Mass. 172, 174–175.

2. Although the demurrer should not have been sustained, this is a case where, before proceeding to a hearing on the merits, it would be appropriate for the trial judge to require clarification and simplification of the bill. The mass of Federal and State regulations involved and their relation to each other might well be made the subject of a stipulation by the parties which could greatly assist consideration of the issues in the Superior Court. Also, some inquiry

---

[5] A motion to dismiss M.G.H.'s appeal to this court has been filed (see part 3 of this opinion, *infra*). It is supported by affidavits including the decision of the commission's hearing officer on M.G.H.'s appeal to the commission from a *rate* set under Exhibit C for M.G.H. of $106.93. The hearing officer set a rate for M.G.H. of $122.91, which the commission and M.G.H. accepted, and of which M.G.H. seeks no review. In the course of his decision, the hearing officer states that M.G.H. "contends that the [r]egulations . . . [Ex. C] are invalid and illegal in that obsolete data . . . [were] used without applying current costs to develop the rate; a per diem rate is not proper but posted charges should be allowed, and there are no provisions for year end or final settlement. The nature of such attack is one that is not properly recognized by the agency hearing officer. The fact that prior years' costs were used to develop and establish a per diem with no final settlement provision is a matter of policy determination for the . . . Commission. . . . [T]he [r]egulations . . . appear to have been validly promulgated. They are also entitled to the presumption that they meet the statutory criteria of adequacy and reasonableness with respect to hospitals generally during the period that they are in effect. It is not for the agency hearing officer to advise the . . . Commission on policy matters." We think this action in effect is a commission determination that the validity of the regulations (Ex. C) is not open in a review of a rate under § 30O.

might be made concerning developments in the eleven months since the entry (April 29, 1970) of the interlocutory decree sustaining the demurrer. The State regulations (Ex. C) were originally promulgated on an emergency basis on February 18, 1970.[6] Inquiry, of course, should be made (a) whether and to what extent the first part of these regulations (concerning rate setting methods) has been altered in any material respects by more permanent regulations (see G. L. c. 30A, §§ 2 [3], and 3 [3]); (b) whether and to what extent the commission has consulted or agreed with H.E.W.[7] in an effort to coördinate State rate setting policy with the Federal requirements (see *Catholic Med. Center of Brooklyn & Queens, Inc.* v. *Rockefeller,* 430 F. 2d 1297, 1298–1299 [2d Cir.], app. dism. 400 U. S. 931; see also *S. C.* 305 F. Supp. 1256, 1263–1268 [E.D. N.Y.]); (c) whether new State regulations are soon to be promulgated which will render moot further prosecution of this proceeding, and (d) whether H.E.W. should be invited or permitted to intervene. In any event, this case appears to be one where the public officials concerned and M.G.H. should be able to stipulate promptly concerning many, if not all, the relevant facts, or to present an adequate case stated.

3. The motion to dismiss M.G.H.'s appeal to this court must be denied. That M.G.H. has obtained a satisfactory adjustment of the particular *rate* applicable to it, under the later part of the State regulations, does not render moot the bill seeking declaratory relief concerning the earlier

---

[6] Examination of the exhibits in Equity No. 7505 between the same parties now awaiting argument in this court, indicates that the emergency regulations were made permanent on April 1, 1970, with only the change in par. 8 to April 1, 1970 (instead of January 1, 1970), of the date as of which certain information was to be furnished. As to inpatient rates, therefore, the issues raised in the pending case (No. 7505) would seem to be substantially the same as those in the present case.

[7] This court perceives from this record no reason why appropriate consultation among H.E.W., the commission, and representatives of the affected hospitals, should not result in the framing of appropriate regulations, clearly consistent with pertinent Federal and State statutes and policies and adaptable to economical, efficient hospital accounting practices. There appears to be no necessity for awaiting proceedings of the type reviewed in *National Welfare Rights Organization* v. *Finch,* 429 F. 2d 725 (Ct. App. D.C.).

*general* regulations (Ex. C). While they remain in effect those general regulations may affect materially the operations and revenues of M.G.H. and other hospitals. Thus, M.G.H. continues to be entitled to declaratory relief concerning them.

4. The interlocutory decree and the final decree are reversed. The case is to stand for further hearing in the Superior Court.

*So ordered*