COMMONWEALTH NURSING HOME, INC. *vs.* RATE SETTING COMMISSION.

Suffolk.    April 10, 1975. — October 6, 1975.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Nursing Home.   Regulation.   Words,* "In effect."

With respect to State payments to providers of medical care and assistance to publicly-aided patients under Medicaid, the effect of the provision of St. 1969, c. 800, § 6, effective on November 22, 1969, that "the fee schedules in effect on January 1, 1969, . . . shall continue in effect until June 30, 1970" was to freeze the fees to be paid from November 22, 1969, through June 30, 1970, at the interim dollar rate in effect on January 1, 1969, set by the Rate Setting Commission, and not at the final dollar rate subsequently

---

computed by it on the total rate year's audited figures and made retroactive to January 1, 1969, and a skilled nursing home was entitled to be paid the interim rate during the freeze period but not the higher final rate [658-661]; the interim rate was not claimed to be confiscatory, or shown to be unfair or unreasonable [661-662].

PETITION filed in the Supreme Judicial Court for the county of Suffolk on May 29, 1974.

The case was reserved and reported by *Kaplan*, J.

*Richard H. Gens* for the Commonwealth Nursing Home, Inc.

*Terence P. O'Malley*, Assistant Attorney General, for the Rate Setting Commission.

HENNESSEY, J. In this case, originally designated a petition for a writ of mandamus, which was reserved and reported to the full court, without decision, by a single justice, the plaintiff seeks declaratory relief concerning the effect of St. 1969, c. 800, § 6. That statute effective November 22, 1969, in substance, froze until June 30, 1970, "the fee schedules in effect on January 1, 1969 for medical care and assistance." The fee schedules set the rate for State payments to certain nursing, convalescent and rest homes for services furnished to publicly-aided patients under the State Medicaid plan. The issue is whether the statute froze the interim[1] daily payment rate in effect on January 1, 1969, or whether it froze the final rate[2] determined, after audit, and made effective retroactively to that date. Resolution of this issue will

---

[1] The parties use the term "permanent rate." We consider this term a misnomer since the permanent rate is in actuality an interim rate and is the per diem rate per patient as based on estimated costs usually taken from a prior rate year. Therefore, in the interests of clarity, this opinion will use the term "interim rate." The interim rate in this case was further modified by a so called makeup/down figure which adjusts for prior year payments. However, this adjustment is not relevant to the question at issue here.

[2] The final rate is the per diem rate computed at year's end and is based on a total rate year's audited figures including costs and other data.

determine what amount is to be paid to a nursing home throughout the freeze period, that is from November 22, 1969, to June 30, 1970.

The Rate Setting Commission (commission), see G. L. c. 7, §§ 30K-30P,[3] interprets the rate freeze as freezing the interim rate which was effective as of January 1, 1969, while the plaintiff asserts that the final rate was frozen. If we construe the statute in the manner urged by the plaintiff, it is entitled to an additional fifty-nine cents per diem per patient for the rate freeze period.[4]

The facts, briefly stated, are these. The plaintiff is a nursing home and health care provider organized, operated and licensed under the laws of the Commonwealth and is classified as a skilled nursing home. The plaintiff has furnished services to publicly-aided patients. On July 9, 1969, the commission set an interim rate of $11.27 for State payments to the plaintiff, effective as of January 1, 1969. In March, 1972, the commission informed the plaintiff that its final rate was $11.86. The commission, relying on St. 1969, c. 800, § 6, refuses, however, to recognize the higher rate for services furnished to eligible patients between November 22, 1969, and June 30, 1970, inclusive.

The plaintiff points out that the rate freeze statute refers to "fee schedules" and argues that the statute was not intended to freeze the specific dollar amount of the interim rate but only the formula for determining rates which was expressed in regulations in effect on January 1, 1969. From this the plaintiff then argues that the fee schedule in effect was a 1969 regulation[5] the provisions

---

[3] The governing statutes at the time this petition was filed were G. L. c. 7, §§ 30K-30P. Effective July 1, 1974, the operative provisions are G. L. c. 6A, §§ 31-36, inserted by St. 1973, c. 1229.

[4] We observe here that it does not necessarily follow that every supplier, under such a result, would be entitled to an additional payment; it might well be shown that some were overpaid.

[5] Pursuant to G. L. c. 30A, the commission from time to time promulgates rules and regulations concerning determination of rates of

of which entitle it to a determination of final rates "retroactive to January 1, 1969." The commission, on the other hand, contends that § 6 freezes the interim rate of January 1, 1969, as that rate was expressed in dollars. The commission argues that the interim rate is itself the fee schedule since it is a general regulation prescribing methods of settling accounts with a provider.[6] See G. L. c. 7, § 30L, as appearing in St. 1968, c. 492, § 3. ("Each rate established by the commission shall be deemed a regulation and shall be reviewable as hereinafter provided.") Thus, the commission submits that the fee schedule referred to in the rate freeze statute is the interim rate in effect as of January 1, 1969. See generally *Massachusetts Gen. Hosp.* v. *Rate Setting Commn.* 359 Mass. 157, 165 (1971). We think that the commission's interpretation of c. 800, § 6, is the correct reading of the effect of that rate freeze statute.[7]

Both parties rely on our decision in *Murphy Nursing Home, Inc.* v. *Rate Setting Commn.* 364 Mass. 454 (1973), app. dism. 417 U. S. 962 (1974). In that case we held that certain commission regulations issued in 1969 were a valid exercise of the commission's authority and that the rate freeze of c. 800, § 6, was not unconstitutional either on its face or as applied.

---

payments to nursing homes for care provided to publicly-aided patients.

[6] We note that the plaintiff's request to the commission for the adjustment is titled "Petition to Adopt a Regulation to Establish a Final Rate for Purposes of c. 800 of the Acts of 1969" and asks for relief in that the "Commission adopt a regulation determining that this petitioner be awarded $.59 per patient per day for services rendered to publicly aided patients."

[7] As we stated in *Murphy Nursing Home, Inc.* v. *Rate Setting Commn.* 364 Mass. 454, 460 (1973), app. dism. 417 U. S. 962 (1974), "Although . . . 'fee schedules' is not an apt term to describe the rates established for nursing homes, another section of the . . . statute shows that the term was used to include all types of payment to providers of services under the Medicaid program."

The plaintiff directs our attention to the following language in the *Murphy* opinion: "The effect of the rate freeze was to subject the rates for Medicaid services rendered from November 22, 1969, to June 30, 1970, to the rates for comparable services rendered on January 1, 1969. Thus the frozen rates, like the rates for January 1, 1969, were determined by the 1969 Regulations, subject to judicial review under G. L. c. 30A, § 7." *Id.* at 460-461. "As we interpret the rate freeze statute, however, it did not interfere with the judicial review of the 1969 Regulations already in process." *Id.* at 461-462. The plaintiff argues that this language indicates that the freeze rate is the final rate. We fail to see this implication. The plaintiff's argument blurs the distinction between judicial and administrative review of rates and regulations and ignores this differentiation as made clear in the *Murphy* opinion in the sentences immediately following those quoted above. "The statute continued in effect the 'fair and reasonable rates of payment' for January 1, 1969, established under those regulations, as they might be *revised by reason of judicial review*. Thus the *effect of the rate freeze was merely to foreclose administrative revision* of those rates for a period of a little more than seven months, from November 22, 1969, to June 30, 1970" (emphasis added). *Id.* at 462. In any event, the *Murphy* decision is inapposite to the issue presently before us since the challenge to the rate freeze raised in the *Murphy* case did not concern interim as opposed to final rates but concerned administrative appeals from previously set rates subject to § 6.

We think that the legislative intent underlying c. 800, § 6, was to freeze the cost to the State expressed by the interim rate payable as of January 1, 1969, and not to freeze the final rate which was to be subsequently determined and retroactively applied.[8] We note that the rate

---

[8] We take a similar view of the argument of amicus curiae, Massachusetts Federation of Nursing Homes, that although the commission

freeze statute makes express reference to "the fee schedules *in effect* on January 1, 1969" (emphasis added). The ordinary meaning of "in effect" is currently in operation or presently existing. That ordinary meaning is inconsistent with an interpretation of "in effect" as implying a rate to be determined finally perhaps months, or in this case over a year after January 1, 1969.

We find significant the fact that the statute froze the rates commencing November 22, 1969, rather than January 1, 1970. If the plaintiff's position were to prevail, the statute would be a nullity as to the period from November 22, 1969, through December 31, 1969. If § 6, or similar legislation, had not been enacted, reimbursement for the November 22-December 31 period would be precisely what the plaintiff now urges, viz.: payment according to the final rate computed for 1969 after audit. We should not lightly infer that the Legislature enacted a statute which was unnecessary and meaningless as applied to the November 22-December 31 period. *Selectmen of Topsfield* v. *State Racing Commn.* 324 Mass. 309, 314 (1949). *Insurance Rating Bd.* v. *Commissioner of Ins.* 356 Mass. 184, 189 (1969). Rather we should, and do, infer that the Legislature intended that the interim rate for 1969 should apply to the entire effective period of the statute, commencing November 22, 1969, and ending June 30, 1970.

Finally, the plaintiff argues that the interim rate will fail to provide it a "fair and reasonable" payment in accordance with G. L. c. 7, § 30L. The answer to this contention is that § 6 foreclosed all but constitutionally based arguments and there is no claim of confiscation nor anything to indicate that the interim rate is unfair or unreasonable. See generally *Murphy Nursing*

_____

may be correct and the rate freeze did continue in effect the January 1, 1969, interim rate, it did not foreclose further appellate review of interim rates before the commission. This position is merely a back door way of arguing for administrative revision as a means to unfreeze the freeze.

*Home, Inc.* v. *Rate Setting Commn.* 364 Mass. 454, 462-463 (1973). Moreover, we must presume that the Legislature was aware of § 30L when it enacted St. 1969, c. 800, § 6. *Selectmen of Topsfield* v. *State Racing Commn., supra,* at 313.

A judgment is to be entered by the single justice declaring that pursuant to St. 1969, c. 800, § 6, the interim rate is to be paid to the plaintiff during the freeze period of November 22, 1969, through June 30, 1970.

*So ordered.*