GLENBEIGH, INC. *vs.* RATE SETTING COMMISSION. No. 89-P-1121. February 13, 1991. *Health Care Facility. Rate Setting Commission. Administrative Law*, Judicial review.

This case presents the question whether the rate-setting methodology of the Rate Setting Commission (commission) as in effect on January 1, 1982, required the plaintiff, Glenbeigh, Inc., doing business as Hampden House Retirement Home (Glenbeigh), to claim an appeal pursuant to G. L. c. 6A, § 36, within thirty days of the commission's filing of rates for reimbursement for the care of publicly aided patients.

The facts are not in dispute. Before 1982, reimbursement from the Commonwealth to resident-care facilities for publicly aided patients was determined by the commission on a retrospective basis. Under this arrangement, the commission would set "interim rates" which were based on the provider's actual costs from the preceding year, subject to a cost-adjustment factor. After the provider had filed its actual costs for the year, the commission fixed a "final rate" based on those actual costs. 114.2 Code Mass. Regs. § 2.01(3) (1981). The difference, or "final settlement," between the interim rate and the final rate thus represented either the reimbursement due the provider or its liability to the Commonwealth. 114.2 Code Mass. Regs. §§ 2.01(3), 2.04(9) (1981). Both rates were appealable under G. L. c. 6A, § 36.

As of January 1, 1982, the commission instituted a "prospective" rate-setting system in which there would no longer be a final settlement; rather, actual costs for a certain base year would be determined and an inflation factor added. Under this system, the 1982 prospective rate would be a percentage of the 1981 interim rate.[1] The 1983 prospective rate, in turn, would be a percentage of the 1982 prospective rate. See 114.2 Code Mass. Regs. § 2.04(7) (1983).

The 1982 prospective rate for Glenbeigh, as set by the commission, was filed with the State Secretary on June 16, 1982. The 1983 prospective rate was filed a year later, on July 14, 1983. When, in 1985, the commission fixed Glenbeigh's final rates for 1979 and 1981, Glenbeigh allegedly moved for redetermination of those rates.[2] While settling the 1979 and 1981 final rates, Glenbeigh learned that the 1982 and 1983 prospective

---

[1]This interim rate would reflect the actual adjusted costs from 1980, the 1979 "final rate." The applicable regulation, 114.2 Code Mass. Regs. § 2.04(7) (1982), provides, in part, that, effective "January 1, 1982, resident care facilities shall be reimbursed on a prospective basis with *no final settlement*" (emphasis supplied). The regulation then sets forth the methods to be used in computing the prospective rates for resident care facilities. The regulation as amended in 1983 contains the same provisions and sets out in addition the method for computing the 1983 prospective rate.

[2]Glenbeigh claimed both in its brief and at oral argument that its appeals of the 1979 and 1981 final rates were timely filed in 1985. Though the record shows no

rates would not be affected by any change made to the 1979 final rate. Only at this point, on June 3, 1988, did Glenbeigh actually appeal the 1982 and 1983 prospective rates in its "Notice[s] of Claim for Adjudicatory Hearing."

The commission, pursuant to 801 Code Mass. Regs. § 1.01(7)(d)(1) (1986), moved to dismiss Glenbeigh's claims of appeal on the ground that they had not been filed within the mandatory thirty-day period set forth in G. L. c. 6A, § 36. On September 6, 1988, the Division of Administrative Law Appeals (division) dismissed both of Glenbeigh's appeals. Glenbeigh appealed to the Superior Court under G. L. c. 30A, § 14, and on June 27, 1989, a judgment was entered affirming the dismissals.

1. *Glenbeigh's challenge.* Under G. L. c. 6A, § 36, inserted by St. 1973, c. 1229, § 2, "[a]ny . . . party aggrieved by an interim rate or a final rate established by the commission, or by failure of the commission to set a rate or to take other action required by law and desiring a review thereof shall, within thirty days after said rate is filed with the state secretary or may, at any time, if there is a failure to determine a rate or to take any action required by law, file an appeal with the division . . . ." The division and the Superior Court both found Glenbeigh's appeals untimely because they had not been filed within the statutory period. Glenbeigh's challenge to the dismissal is essentially twofold: first, it argues that the 1982 and 1983 prospective rates were not "final" for the purposes of the statute because the final rates for the "base year" (1981) upon which the prospective rates were founded had not yet been established; second, it contends that due to the commission's "failure to determine a [final] rate or take [other] action required by law," Glenbeigh should have been able to appeal "at any time." G. L. c. 6A, § 36.

2. *The finality of the rates.* Glenbeigh's position not only contradicts the express provisions of the regulations, see note 1, *supra,* but also threatens to subvert the policy underlying the movement from a retrospective to a prospective rate-setting design. In this new system, a prospective rate of reimbursement is established by the commission and filed with the State Secretary. If actual costs to the provider turn out to be lower than those set in the rate, the provider retains the excess; if they are higher, the provider must absorb the difference. This arrangement, designed to provide the vendor with an incentive to economize, represents a substantial departure from the retrospective system in place before 1982. The prospective rate has consistently been upheld as a proper method of reimbursement to health care facilities. See, e.g., *Goddard Memorial Hosp.* v. *Rate Setting Commn.,* 403 Mass. 736, 738, 742-743 (1989).

The former retrospective, interim-to-final rate progression has yielded to an explicitly "one-shot" arrangement. The regulations are clear that, un-

---

evidence of any such filing, the commission never disputed Glenbeigh's assertions, so we take them to be true.

less there is a timely appeal of the prospective rate when filed, that rate will effectively become the final rate because there is no longer a final settlement. See 114.2 Code Mass. Regs. §§ 2.01(1); 2.01(3); 2.04(7) & 2.05(9) (1983). The prospective rate is not an interim rate subject to redetermination. While the prospective system provides for rate readjustment in various circumstances, see, e.g., *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Commn.*, 394 Mass. 233, 244-245 (1985), there will be no such redetermination without a seasonable appeal; unlike the retrospective system, the vendor cannot anticipate relief months or years down the line.[3] Furthermore, the provision in 114.2 Code Mass. Regs. § 2.05(9) (1983) that the 1982 prospective rate will be based on the interim rate "in effect" on December 31, 1981, militates against any suggestion that redetermination of that 1981 rate would affect the prospective rate. See *Commonwealth Nursing Home, Inc.* v. *Rate Setting Commn.*, 368 Mass. 656, 660-661 (1975) (term "in effect" means figures are absolutely fixed at that time, rather than open to determination at a future date). Here, the burden was squarely on Glenbeigh to file its notice of appeal within the statutory time period. Because Glenbeigh failed to observe the unequivocal mandate of G. L. c. 6A, § 36, the division and the Superior Court judge were correct in allowing the commission's motion to dismiss.

3. *The alternative theory.* Glenbeigh's alternative theory of G. L. c. 6A, § 36, presented most fully at argument, rests on that portion of the statute providing that a party "may, at any time, if there is a failure to determine a rate or take any action required by law, file an appeal with the division . . . ." Glenbeigh argues that because the regulations require the commission to adjust the prospective rate if the base year rate is increased, the commission has failed to take an "action required by law" and Glenbeigh may file its appeal "at any time." It seems clear to us that the right of appeal "at any time" only comes into play when the commission has not set a rate, not as here, where the complaining party deems the rate unreasonable. In declining to apply Glenbeigh's questionable construction of the statute, see *Manning* v. *Boston Redev. Authy.*, 400 Mass. 444, 453 (1987); *Korkuch* v. *Planning Bd. of Eastham*, 26 Mass. App. Ct. 307, 309 (1988), we agree with the division that G. L. c. 6A, § 36, is "unequivocal" in its requirements. Where the commission has filed a prospective rate with the State Secretary, a party wishing to appeal that rate must do so within the mandatory thirty-day period.[4]

---

[3]Glenbeigh's counsel conceded at oral argument that under the retrospective system, a health care facility never had reason to appeal an interim rate because the interim rate was always rendered moot by submission of the final rate.

[4]Glenbeigh's remaining contentions relate to alleged procedural errors: that the division prematurely allowed the commission's motion to dismiss and that the division's decision was not accompanied by a statement of all the issues of law and fact upon which it was based. The latter argument was not raised in the Superior Court, and the other arguments were not raised before the division; these issues therefore are not properly before us. *Albert* v. *Municipal Ct. of Boston*, 388 Mass. 491, 493-

*Judgment affirmed.*

*Katherine K. Coolidge* for the plaintiff.
*Steven K. Berenson*, Assistant Attorney General, for the defendant.

---

494 (1983). *Shoolman* v. *Health Facilities Appeals Bd.*, 404 Mass. 33, 43 (1989). *Howard Johnson Co.* v. *Alcoholic Bev. Control Commn.*, 24 Mass. App. Ct. 487, 490 n.3 (1987).
[1]Cambridge Solar Enterprises, Inc.