MASSACHUSETTS GENERAL HOSPITAL *vs.* COMMISSIONER
OF ADMINISTRATION
(and a companion case[1]).

Suffolk.    November 6, 1967. — December 6, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, &
REARDON, JJ.

*Hospital.    Public Welfare.    Administrative Board or Officer.    Words,*
"*Annually.*"

The word "annually" in the provision of G. L. c. 7, § 30K, that the Com-
missioner of Administration shall certify hospital rates "annually"
should be read as meaning "at least annually," and the Commis-
sioner is not precluded from certifying more than one set of rates in
one year. [374]

Where the Commissioner of Administration under G. L. c. 7, § 30K,
certified hospital rates after notice and public hearing and filed the
rates with the State Secretary, and some months later, upon the basis
of new data certified by the Bureau of Hospital Costs, but without a
new notice or hearing, certified new and substantially higher hospital
rates, such new rates were not validly promulgated and never became
effective. [375]

The adequacy of hospital rates certified by the Commissioner of Admin-
istration under G. L. c. 7, § 30K, cannot be attacked collaterally. [376]

BILL IN EQUITY for declaratory relief filed in the Superior
Court on October 20, 1965.

PETITION for review filed in the Superior Court on July 21,
1966.

The plaintiff in the first case appealed from a final decree
entered after hearing by *Kalus*, J.    The second case was
heard and reported by *Mitchell*, J.

*Colette Manoil* (*Thomas C. Cameron* with her) for the
Massachusetts General Hospital.

---

[1] The hospital in the companion case sought judicial review under G. L.
c. 30A of a decision of the State Department of Public Welfare that the city
of Somerville need pay only $42.85, the AIPD rate for the hospital which
became effective on April 30, 1965, for hospital services rendered for two days
in 1965 to a Mrs. Cioffi, a recipient of medical assistance for the aged who re-
sided in Somerville. The companion case was reported for our decision, ap-
parently pursuant to G. L. c. 214, § 31.

*Frederic E. Greenman*, Assistant Attorney General (*Shirley D. Boyle*, Assistant Attorney General, with him), for the Commissioner of Administration & another.

CUTTER, J.   In two cases the hospital seeks judicial determination of issues concerning the promulgation under G. L. c. 7, § 30K (as amended through St. 1963, c. 439, § 1),[2] of revised all-inclusive per diem (AIPD) hospital charges to be paid by certain State and municipal agencies. These revised rates were to become effective on October 1, 1965.   The two cases present similar issues, which can be dealt with adequately as presented in the first case, without setting forth the details of the second case (see fn. 1).

In the first case, the hospital asked declaratory relief against the Commissioner of Administration (the commissioner).   A Superior Court judge made findings and rulings adverse to the hospital's contentions.   From a final decree making declarations in accordance with the findings and rulings, the hospital appeals.

The case arises from the following four actions of the com-

---

[2] Section 30K, as amended in 1963, reads in part, "The director of hospital costs and finances shall [A] determine *from time to time and certify to the commissioner of administration, at least as often as annually,* the average all-inclusive per diem charge to the general public for public ward accommodations or their equivalent, the all-inclusive per diem cost of care in such accommodations and the all-inclusive per diem cost of care for all patients of each hospital . . . licensed by the department of public health under . . . [c. 111, § 71].   In determining such all-inclusive charges and costs, charges for and costs of ancillary services shall be included. . . . [Then follow provisions governing (a) certification when the AIPD cost of care cannot be determined for a hospital, (b) the filing of data by hospitals, and (c) the director's powers to make examinations of hospital books.]   [B] The director shall make his determination as aforesaid in accordance with a uniform system of hospital accounting and cost analysis and shall take into account . . . depreciation and a fair return on invested capital for proprietary hospitals, but shall not include grants-in-aid for which no services are rendered. . . . The commissioner [C] shall certify *annually* to each of the various departments, boards or commissions of the commonwealth purchasing care in such hospitals . . . or reimbursing cities or towns for such care purchased by them, such rates with respect to each such hospital, . . . as will [D] reflect reasonable hospital costs or charges made to the general public, whichever is the lower.   All departments, boards or commissions of the commonwealth purchasing such service shall pay the rates so certified.   The various subdivisions of the commonwealth purchasing hospital care and receiving reimbursement therefor, in whole or in part from the commonwealth, shall pay the hospitals . . . for such care at the rates so certified.   The commissioner shall also certify [E] *at least annually* to the department of industrial accidents the all-inclusive per diem cost of care for all patients for each such hospital . . . ." (emphasis supplied).   The letters in brackets are inserted to permit convenient later reference to the language immediately following such letters, respectively.

missioner: (1) the commissioner promulgated emergency hospital rates on February 4, 1965, and notified the State Secretary (see G. L. c. 30, § 37, as amended through St. 1951, c. 556, § 1, and c. 30A, § 5) that notice and hearing were impracticable because "no rates . . . [had] been promulgated pursuant to . . . [§] 30K, within the last year, the result of which . . . [was] causing the hospitals . . . great economic and financial hardship and harm." (2) After notice and a public hearing on February 25, 1965, the commissioner on April 30, 1965, certified rates effective January 1, 1965, to be charged by the hospitals without any indication that the rates were temporary in effect or emergency rates. These rates he filed in the State Secretary's office, with a covering letter stating that under G. L. c. 30A, § 2, "pursuant to notice, a hearing was held on February 25, 1965, to determine such rates." (3) To become effective on October 1, 1965, the commissioner certified new and higher hospital rates (the October 1 rates).[3] The covering letter, dated October 1 and received October 7, filing these rates with the State Secretary, recited that "pursuant to notice, a hearing was held on February 25, 1965, to determine such rates." (4) On November 12, 1965, the commissioner sent to the State Secretary a letter stating that he had been advised by the Attorney General that he "had no authority to promulgate the rates which . . . [he] filed . . . on September 28, 1965 [apparently referring to the rates in fact filed with the letter of October 1, received October 7] . . . under . . . G. L. c. 7, § 30K." He

---

[3] For representative hospitals, the rates promulgated on February 4 and those issued on April 30, 1965, appear to be the same. The October 1, 1965, rates were higher in varying amounts as indicated by the following table.

| Hospital | Emergency Rates of Feb. 4, and Rates of April 30, 1965. | October 1, 1965. |
|---|---|---|
| Massachusetts General | $42.85 | $47.85 |
| Peter Bent Brigham | 44.86 | 51.57 |
| Carney | 34.52 | 39.83 |
| Memorial, Worcester | 34.92 | 35.11 |
| St. Luke's, Pittsfield | 33.91 | 35.96 |
| St. Elizabeth's, Brighton | 29.96 | 37.09 |

also stated that he had "held no hearing on the withdrawal of these rates."

The trial judge ruled (1) that the commissioner "having duly established . . . hospital care rates on April 30, 1965, to be effective from January 1, 1965 (for the calendar year of 1965), lacked authority on October 1, 1965, to establish a new and different schedule of rates for the year 1965"; (2) that the "purported certification of . . . [the October 1] rates was without legal effect"; and (3) that the commissioner "was not required to afford the . . . [hospital] an adjudicatory proceeding . . . [or to] hold a public hearing prior to the . . . withdrawal of rates which . . . [he] had no . . . authority to promulgate in the first instance." These rulings were incorporated in the final decree.

The record does not indicate what evidence was before the commissioner at the February 25 public hearing. Allegations of the present bill not explicitly denied by the commissioner, see Rule 29 of the Superior Court (1954), refer to exhibits annexed to the bill and summarized in the margin.[4] These exhibits indicate that the commissioner, at the time of the February 25 public hearing, recognized that the cost data then placed before him were seriously out of date and "averaged twenty-seven months in age" in a period of changing (and apparently rising) hospital costs, and that the rates based upon such cost data were not reasonable and were "in many cases, 20% to 30% below what the evidence indicated . . . [to be] the current costs of the hospitals." He thus apparently regarded the April 30 rates as established "tentatively" and proceeded later to attempt "to rectify the situation by updating the hospital costs." The commissioner in his letter of August 9, 1965,

---

[4] One such exhibit is a request (dated August 9, 1965) by the commissioner for an opinion of the then Attorney General. Another is the opinion (dated August 30, 1965) of the then Attorney General advising that the commissioner could not certify new rates in 1965, once having done so on April 30. A third exhibit was a request (dated September 9, 1965) by the commissioner for reconsideration of the opinion of August 30, 1965, in view of the circumstance that "on April 30, 1965, it was . . . known by everyone concerned . . . that the rates being promulgated did not reflect reasonable hospital costs."

to the Attorney General (fn. 4) states that the "Bureau of Hospital Costs and Finances completed the updating . . . and on July 8, 1965, certified . . . new rates to the [c]ommissioner" who then desired to certify these new rates under c. 7, § 30K, to be effective October 1, 1965, as reflecting "the lower of reasonable hospital costs or charges." The higher rates issued on October 1 indicate that the commissioner, on the basis of the new reports, in effect determined that the rates of April 30, 1965, were very much too low, that hospital costs were rising, and that rates based on out of date costs were inadequate.

1. Section 30K (see fn. 2) provides that rates to be paid to the hospitals by public bodies for the care of public patients are to be determined by the commissioner so as (fn. 2, at point [D]) to "reflect reasonable hospital costs or charges made to the general public, whichever is the lower." In collecting cost data (see fn. 2, at point [B]) a "uniform system of hospital accounting and cost analysis" is to be employed. Items such as depreciation are to be taken into account. The section has been viewed as directing the commissioner to establish compensatory rates of reimbursing hospitals from public funds for their costs in giving care to public patients, so that the hospitals will not be out of pocket for caring for welfare and other public patients, and so that the many nonprofit, charitable hospitals in the Commonwealth (of which the Massachusetts General Hospital is one) will not be obliged to deplete funds held for general charitable purposes for the care of such public patients. See *Springfield Hosp.* v. *Commissioner of Pub. Welfare,* 350 Mass. 704, 709–710. The section must be interpreted with this purpose in mind. Obviously the AIPD rate, in a period of rising prices and wages, will not be compensatory if it reflects the lower hospital expenses, including wages and costs of goods, of a period long past instead of the higher costs of the current period in which the hospital is called upon to render services to public patients.

The principal contention now advanced by the Attorney General is that § 30K does not permit the commissioner to

certify more than one set of AIPD rates in each year. He relies upon the provision of § 30K (fn. 2, at point [C]) that the "commissioner shall certify annually" the AIPD rates. Standing by itself this language would indicate only one certification each year, but the word "annually" does not stand by itself. The director of hospital costs (fn. 2, at point [A]) is to "determine from time to time and certify to the commissioner . . . at least as often as annually" the per diem charges. The commissioner is to certify (fn. 2, at point [E]) AIPD rates "at least annually" to the Department of Industrial Accidents. These two provisions suggest strongly that costs may be reëxamined by the commissioner more frequently than once a year. Such an interpretation is consistent with the general purpose of § 30K to provide fair and just rates for hospital care, a purpose more accurately accomplished if the commissioner is free to change rates as often as costs change significantly. See G. L. c. 30A, § 4, permitting petitions by interested persons for amendments of regulations. There is little apparent reason for the inconsistency of the language used in § 30K. In the absence of any clear statutory indication to the contrary, we read "annually" (fn. 2, at point [C]) as meaning "at least annually."

2. The rates certified on April 30, 1965, were not, and did not purport to be, merely tentative, emergency, or temporary rates, like the emergency rates put out on February 4, 1965, which under G. L. c. 30A, § 2 (3), could "not remain in effect for longer than three months unless during that time" notice was given and a public hearing held in accordance with § 2. The April 30 rates were promulgated by the commissioner after a public hearing on February 25, the date of the only public hearing mentioned in the record as held on AIPD rates in 1965. Even if issuing this general regulation was not an "adjudicatory proceeding" under G. L. c. 30A, § 1 (1), a matter which we need not now decide, the hospitals and perhaps various public bodies and boards, in a matter so substantially affecting their interests, were properly given such a public hearing under general principles of

administrative due process. See *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 499–500. These April 30 rates (as general regulations) could be changed as substantially as was done in the October 1 rates (except perhaps to correct clerical or computation errors) only after new notice to all entitled to notice and a new hearing. There is in the record no suggestion of any such new notice and new hearing. The updated cost schedules of the Bureau of Hospital Costs and Finances (see fn. 4 and related text of this opinion) could not have been before the commissioner at the public hearing on February 25. He could not have taken such data into account in considering new rates without disclosing the new schedules as evidence which he planned to consider, and without giving to persons in interest an opportunity at least for comment on the new schedules. See *American Employers' Ins. Co.* v. *Commissioner of Ins.* 298 Mass. 161, 168–169; *American Employers' Ins. Co.* v. *Commissioner of Ins.* 335 Mass. 748, 752–753. We hold that the October 1 rates were not validly issued because of failure to comply with the applicable provisions of G. L. c. 30A. See *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Commn.* 345 Mass. 228, 233–235; *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 346 Mass. 739, 740–741. The presumption of the regularity of actions by public officers has no application (see *Robie* v. *Massachusetts Turnpike Authy.* 347 Mass. 715, 725; see also *Century Cab Inc.* v. *Commissioner of Ins.* 327 Mass. 652, 668) for the letter filing the October 1 rates with the State Secretary shows that the commissioner was relying on the same public hearing of February 25 which was the basis of the April 30 rates.

Because the October 1 rates were not validly promulgated, they never became effective. Consequently, there was no obligation to give any notice or to grant a public hearing with respect to the commissioner's recognition of the invalidity of the October 1 rates, which had no legal effect.

3. What has been said disposes also of the companion

case (fn. 1) with respect to the hospital's claim for reimbursement for two days' care in 1965 afforded to a public patient from Somerville.  The hospital was entitled to reimbursement only at the April 30 rate and not at the higher October 1 rate, which never became effective.  The validity of the April 30 regulation cannot be attacked collaterally. *Massachusetts Gen. Hosp.* v. *Cambridge,* 347 Mass. 519, 522. No petition for judicial review (under c. 30A) of the rates of April 30, 1965, is now before us.

4. In the hospital's case against the Commissioner of Administration, the final decree is to be modified by striking out paragraphs 2, 3, and 4, and inserting in place thereof a declaration that the commissioner's rates, intended to become effective October 1, 1965, were not based on adequate new notice and hearing and never took effect as valid regulations.  As so modified, the decree in that case is affirmed.  In the hospital's case against the Commissioner of Public Welfare, a final decree is to be entered consistent with the view that the hospital is entitled to reimbursement from the city of Somerville for care rendered in 1965 to Mrs. Cioffi only at the rate established by the Commissioner of Administration on April 30, 1965.

*So ordered.*