PALM MANOR NURSING HOME, INC. *vs.* RATE SETTING COMMISSION.

Suffolk.    April 7, 1971. — June 14, 1971.

Present: TAURO, C.J., SPIEGEL, REARDON, QUIRICO, & BRAUCHER, JJ.

*Nursing Home. Public Welfare. Regulation. State Administrative Procedure Act.*

A determination by the Board of Rate Setting under G. L. c. 7, § 30L, as amended through St. 1963, c. 809, § 1, of annual per diem rates to be paid nursing homes for care of publicly aided patients was a "regulation" under G. L. c. 30A, § 1 (5), and was judicially reviewable under § 7; a determination by the board of a rate for a nursing home claiming that the rate established generally was inadequate or unreasonable "as to such home" was an adjudication and was judicially reviewable under c. 30A, § 14. [654–655]

Upon a review under G. L. c. 30A, § 14, of a decision by the Board of Rate Setting fixing a certain per diem rate to be paid by agencies of the Commonwealth to a nursing home operating at far less than capacity, it was held that the board and the trial judge properly rejected the home's attempts to prove a right to a higher allowance through evidence of a higher rate alleged to be necessary to avoid a loss, evidence of the rate it charged private patients, and attacks upon the board's hearing officer's computations, and that the home had failed to show that the established rate was "inadequate or unreasonable as to such home" under c. 7, § 30L, as amended through St. 1963, c. 809, § 1. [656–657]

BILL IN EQUITY filed in the Superior Court on December 13, 1968.

The suit was heard by *Campbell,* J.

· *Colette Manoil* for the plaintiff.

*Gregor I. McGregor,* Assistant Attorney General (*Alan G. MacDonald,* Assistant Attorney General, with him), for the defendant.

BRAUCHER, J. The Rate Setting Commission (the commission) allowed the plaintiff nursing home a per diem rate of $10.46 for 1967 to be paid by various agencies of the Commonwealth. The plaintiff sought judicial review of the commission's decision under G. L. c. 30A, § 14. The judge made rulings and an order for decree, and the final decree affirmed the decision of the commission. The plaintiff appeals under G. L. c. 30A, § 15.

Early in 1967, before opening, the plaintiff applied to the Board of Rate Setting for Convalescent or Nursing Homes and Rest Homes (the board) for the establishment of a per diem rate for publicly aided patients, and a temporary rate of $8.82 was set in March, 1967. The plaintiff promptly appealed and requested a hearing pursuant to G. L. c. 7, § 30L. On April 17, 1967, the board notified the plaintiff that it and other nursing homes listed were entitled to a rate of $9.43. The plaintiff opened late in April and was licensed by the Department of Public Health to accept a total of three public and private patients. The licensed number of patients was increased five times, reaching a total of seventy-nine patients late in November, 1967. The capacity of the home is 115 or 120 patients.

New rules and regulations effective July 1, 1967, provided a $10 rate for new homes. Nevertheless, the board on December 29, 1967, notified the plaintiff that it would be allowed a rate of $10.46, retroactive to the date of opening. The plaintiff again requested a hearing, and after a hearing in May, 1968, a hearing officer of the board submitted his finding in August, 1968, sustaining the $10.46 rate for 1967. Effective September 12, 1968, the board was abolished and the commission established. St. 1968, c. 492. On Novem-

ber 18, 1968, the commission approved the $10.46 rate over the written objections of the plaintiff, and the bill for judicial review followed.

1. The governing statute was G. L. c. 7, § 30L, as amended through St. 1963, c. 809, § 1: ". . . [The] board shall, after hearing, determine at least as often as annually the per diem rate or rates to be paid to . . . nursing homes . . . by the various departments, boards or commissions of the commonwealth . . . and may establish fair and reasonable classification or classifications of such rate or rates. Such rates shall be adequate and reasonable. The determination of the per diem rate or rates as provided in this section shall be deemed a 'regulation' as defined in paragraph (5) of section one of chapter thirty A. . . . If a person conducting a . . . nursing home . . . believes that the rate established under this section is inadequate or unreasonable as to such home, he may, within sixty days after the date such rate was established, file an appeal with the board for a determination of a rate for such . . . nursing home . . . ."

By St. 1968, c. 492, § 3, these provisions and others were struck out and six new sections, G. L. c. 7, §§ 30K–30P, were inserted. Pending proceedings before the board were to be turned over to the newly created commission. St. 1968, c. 492, § 25. Subsequent proceedings before the commission and judicial review in the Superior Court were conducted under the law as it stood before the 1968 revision, and we therefore do not consider the effect of the new G. L. c. 7, § 30O, providing for an "exclusive method of review of all rates." See *Massachusetts Gen. Hosp.* v. *Rate Setting Commn. ante,* 157, 164–166.

As the judge ruled, the provisions of § 30L quoted above describe two types of administrative action. First, the board is to determine annual per diem rates, using fair and reasonable classifications and setting adequate and reasonable rates. The determination is to be treated as a "regulation" under G. L. c. 30A, § 1 (5), and may thus be reviewed under G. L. c. 30A, § 7, through a petition for declaratory relief under G. L. c. 231A. Compare *Massachusetts Gen.*

*Hosp.* v. *Cambridge,* 347 Mass. 519, 522; *Springfield Hosp.* v. *Commissioner of Pub. Welfare,* 350 Mass. 704, 710; *Massachusetts Gen. Hosp.* v. *Commissioner of Admn.* 353 Mass. 369, 374. Second, an individual nursing home may appeal for a determination of an individual rate for that home, claiming that the rate established generally is inadequate or unreasonable "as to such home." Such a determination is an adjudication rather than a regulation, and is reviewable under G. L. c. 30A, § 14.

2. We agree with the judge that the adjudicatory proceeding here under review was not held for the purpose of determining the validity of the board's regulations or the adequacy or reasonableness of the rates applicable to nursing homes generally. We therefore do not consider the plaintiff's general assault on the board's classification system, based largely on a study by the United States General Accounting Office. The plaintiff also asserts that various regulations of the board were invalid because not properly filed with the Secretary of State under G. L. c. 30, § 37, and c. 30A, § 5, or because there was no notice or hearing under G. L. c. 30A, § 2 or § 3. The fact that a regulation was not effective because not properly promulgated would prevent its use as a basis for the rate determination here under review. *Massachusetts Gen. Hosp.* v. *Cambridge,* 347 Mass. 519, 522–523. *Massachusetts Gen. Hosp.* v. *Commissioner of Admn.* 353 Mass. 369, 375. But the "Rules and Regulations Governing the Determination of Individual Rates of Payments to Convalescent and Nursing Homes Under General Laws, Chapter 7, Section 30L" (the 1967 Rules), effective as of July 1, 1967, approved by the board August 8, 1967, and filed with the Secretary of State on October 11, 1967, were the basis for that determination. They are before us in a form constituting "prima facie evidence of compliance with all regulation making requirements imposed by law." G. L. c. 30A, § 5, inserted by St. 1954, c. 681, § 1.

3. "The regulation stands on the same footing as would a statute . . . . All rational presumptions are made in favor

of the validity of every legislative enactment." *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138–139. The plaintiff has the burden of showing that the rate in question is inadequate or unreasonable "as to such home." The applicable provision of the 1967 Rules, paragraph 11, states, "New homes constructed during 1966–1967–1968 shall be given a temporary rate of $10.00 per day until such time as sufficient data, statistics, records, and books can be made available to the Rate Setting Board and a 90% occupancy of the total beds for a reasonable amount of time." The commission's reason for allowing the $10.46 rate was that "because a rate of $10.46 per day was set according to the resurvey under the old classification system, the Rate Setting Commission will not reduce the rate which had been previously set."

4. The plaintiff sought to carry its burden in three ways. First, through evidence of its costs in 1967 it showed that a rate of approximately $22 would be required to avoid a loss. Second, it showed that its charge to private patients was about $14 (it claims an average charge of $15.24 to private patients in 1967). Third, it attacks the hearing officer's computations which produced a rate of $8.12 on a basis of 90% occupancy. Neither the commission nor the judge accepted any of these three attempts at proof, and we think they were properly rejected.

The critical fact is that the plaintiff reported that it furnished a total of 8,789 patient days of nursing home care, while it had a capacity to care for 115 patients for the 250 days it was open, a total of 28,750 patient days. The low rate of occupancy was not the plaintiff's fault, but resulted from limitations imposed by the Department of Public Health and not contested or explained in this proceeding. As the commission found, a rate based on cost would produce a totally unrealistic per diem rate when applied to a home operating at less than one-third capacity.

Nor do we think the commission was bound to allow the rates charged private patients by the home. There was testimony by the plaintiff's administrator that publicly

aided patients were admitted during 1967 only if they were "ambulatory or close to it and would require less than a serious amount of care." Most of these patients were admitted at a time when the $9.43 rate was being paid, and it was not shown that the cost of caring for them was fairly comparable to the costs for private patients.

The plaintiff's attack on the hearing officer's computations has some force, but it falls short of a showing that on the basis of 90% occupancy the cost based rate should be more than $10.46. If the plaintiff's figure for total operating costs, $200,548.14, is accepted, and divided by 90% of a capacity of 28,750 patient days, or 25,875, the quotient is $7.75. This is the basis used by the commission for established nursing homes under the 1967 Rules, and it seems fairly designed to avoid public payments for empty beds. The commission suggests also that the plaintiff might have shown its fixed costs on the basis of 90% occupancy and added its variable costs on a basis of actual occupancy. But no such showing was made, and we need not decide what effect should be given to such a showing.

5. It follows that the plaintiff failed to show that the $10.46 rate established was "inadequate or unreasonable as to such home" under G. L. c. 7, § 30L, as amended through St. 1963, c. 809, § 1, and the commission properly so determined.

*Decree affirmed with costs of appeal.*