MASSACHUSETTS STATE PHARMACEUTICAL ASSOCIATION
& others[1] vs. RATE SETTING COMMISSION
(and a companion case[2]).

Suffolk.  May 3, 1982. — August 9, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Declaratory proceeding. *Administrative Law,* Regulation, Hearing, Agency, Rate setting. *Regulation. Due Process of Law,* Regulatory proceeding. *Rate Setting Commission. Division of Hearings Officers. Medicaid. Pharmacy.*

Discussion of guiding principles concerning judicial challenges to regulations promulgated by administrative agencies. [126-128]

The fact that the Rate Setting Commission had failed to determine rates annually as provided by G. L. c. 6A, § 32, third par., had no bearing on the lawfulness of a regulation fixing the dispensing fee for pharmacies that provide prescription drugs to persons eligible for Medicaid benefits. [128-129]

Failure of the Rate Setting Commission to fulfil requirements of G. L. c. 6A, § 32, fourth par., that it establish by regulation the items allowable as operating expenses in determining rates of reimbursement to pharmacies providing prescription drugs under the Medicaid program, did not, in the absence of prejudice resulting therefrom, render invalid a regulation of the commission fixing the dispensing fee for such pharmacies. [129-130]

Absence of one of the two incumbent commissioners of the Rate Setting Commission from a portion of the public hearing on the adoption of a regulation, and the unavailability of a transcript of the proceedings for that commissioner to read before the regulation was issued, did not, in the circumstances, deny procedural fairness to participants in the regulatory proceeding or otherwise render the regulation invalid. [130-131]

Ex parte communications by officials of the Department of Public Welfare suggesting certain action by the Rate Setting Commission with respect to the dispensing fees of pharmacies providing prescription drugs

---

[1] The other plaintiffs are individual pharmacists and pharmacies.

[2] Massachusetts State Pharmaceutical Association & others *vs.* Division of Hearings Officers, and the Rate Setting Commission.

under the Medicaid program did not render invalid a dispensing fee regulation which the commission subsequently issued, where it did not appear that the commission had abdicated its responsibility in favor of the other officials, or had responded to inappropriate pressure from them, or had denied essential fairness to participants in its regulatory proceeding. [131-135]

A regulation of the Rate Setting Commission fixing the dispensing fee for pharmacies furnishing prescription drugs under the Medicaid program was not substantively defective, where the commission had not been arbitrary or capricious in adopting the regulation and where the fee in question appeared neither confiscatory nor inadequate to meet implicit statutory standards. [135-137]

Although the Division of Hearings Officers had no authority to consider, as a "class action," a proceeding by a State pharmaceutical association and certain named pharmacies challenging a regulation of the Rate Setting Commission, the Division should not have dismissed the proceeding as to the named pharmacies. [137]

On remand of an administrative proceeding in which a regulation of the Rate Setting Commission was challenged by certain named pharmacies, the Division of Hearings Officers was to determine at the outset whether its administrative review is available with respect to regulations of general application. [138-140]


CIVIL ACTIONS commenced in the Superior Court Department on November 10, 1978, and May 7, 1979, respectively.

The cases were tried by *Hurd,* J., without jury.

The Supreme Judicial Court granted a request for direct appellate review.

*Jeffrey M. Smith* for the plaintiffs.

*Stephen S. Ostrach,* Assistant Attorney General (*Carl A. Valvo & Maureen L. Fox,* Assistant Attorneys General, with him) for the defendants.

WILKINS, J. We have before us two appeals arising from challenges, on both procedural and substantive grounds, to a Statewide dispensing fee for pharmacies that provide prescription drugs to persons eligible for benefits under Medicaid. The fee was set forth in a regulation (114.3 Code Mass. Regs. 31.00) issued on September 6, 1978, by the defendant Rate Setting Commission (commission). See G. L. c. 6A, § 32, third par. The plaintiff pharmacies and pharmacists and the Massachusetts State Pharmaceutical Associ-

ation (association) claim that the regulation, fixing a single dispensing fee of $2.70, was not adopted according to proper procedures and was fixed at a level that is contrary to law. In certain circumstances, the dispensing fee is to be used in determining the rate of reimbursement to pharmaceutical providers.[3]

A complaint for a declaratory judgment was filed on November 10, 1978, in the Superior Court in Suffolk County as a direct judicial challenge to the regulation. See G. L. c. 30A, § 7, and G. L. c. 231A. The second action was an appeal to the Superior Court from a decision of a hearing officer of the Division of Hearings Officers (division) (established pursuant to G. L. c. 7, § 4H) dismissing an administrative challenge to the commission's regulation. The administrative appeal to the division raised the same issues, in the form of a purported class action, as did the direct judicial challenge entered in the Superior Court. The division dismissed the administrative appeal in its entirety, on motion of the commission, on the ground that the division had no authority to consider class actions.[4]

The two actions were tried together in the Superior Court. The judge ruled, in the declaratory judgment action, that the plaintiffs had "failed to show that there [were] no conceivable grounds upon which the final rate established by the Commission could be upheld." He made no rulings on the plaintiffs' challenges to the methods and pro-

---

[3] The rate of reimbursement was the lower of (a) the pharmacy's usual and customary charge for the drug or (b) a dispensing fee of $2.70 plus 95% of the wholesale price of the drug.

[4] The parties to the two proceedings are not identical. The division is a defendant only in the appeal from the dismissal of the purported class action. There are more pharmacists and pharmacies named as plaintiffs in the direct judicial action than in the administrative appeal. Only five pharmacies are represented as named plaintiffs in the administrative appeal. All but one of them is a plaintiff in the direct judicial challenge to the rate regulation. The direct action contains allegations that it is brought as a class action, but no class has been certified. We shall refer to the pharmacies, the pharmacists, and the association, collectively, as the plaintiffs.

cedures used by the commission in setting the rate, concluding that to do so was beyond the proper scope of judicial review. He concluded that the regulation was not void on its face and ordered judgment for the commission. The plaintiffs and the commission appealed from that judgment.[5]

On the plaintiffs' appeal from the division's dismissal of their purported class action, the judge concluded that the division improperly dismissed the administrative appeal of the individual pharmacies and remanded the matter to the division for consideration of the individual pharmacies' appeals. He agreed with the division's conclusion that a class action could not be maintained before it. As to the individually named pharmacies, the judge took the view that the reasonableness of the dispensing fee and the methods and procedures by which it was adopted were open for consideration before the division. He directed that, on remand, the division should hold an adjudicatory hearing "to consider all factors relating to the promulgation of the rates, including the appropriateness and effectiveness of the methods and procedures used by the Rate Setting Commission in establishing the rate. The Division is to determine the adequate, fair and reasonable rate [of] reimbursement for each provider." The plaintiffs appealed from this judgment. The commission also appealed from this judgment, but only to challenge the scope of the directions to the division as to what it must do on remand. We granted the plaintiffs' application for direct appellate review of the consolidated appeal. On the central issue in contention, we reject the plaintiffs' challenge to the regulation.

---

[5] The commission's appeal is limited in scope. The commission, appropriately but unsuccessfully, sought an amendment of the judgment so that the judgment would make a declaration on the merits of the issues in contention. Such a form of judgment is the correct one in a declaratory judgment proceeding. See *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 302 n.30 (1979). In our disposition of this action, we shall direct that a judgment be entered concerning the validity of the challenged regulation.

## The Declaratory Judgment Action

We consider first the plaintiffs' appeal in the declaratory judgment action in which the judge dismissed their direct judicial challenge to the commission's dispensing fee regulation. We begin by setting forth a brief statement of guiding principles concerning challenges to agency regulations. In a declaratory judgment proceeding (see G. L. c. 30A, § 7, and G. L. c. 231A), a provider may maintain a direct judicial challenge to a general regulation, both on the ground that the general regulation was not validly adopted (see *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 780 [1980]; *Palm Manor Nursing Home, Inc.* v. *Rate Setting Comm'n*, 359 Mass. 652, 655 [1971]), and on the ground that the general regulation is substantively defective, that is, inadequate (see *Murphy Nursing Home, Inc.* v. *Rate Setting Comm'n*, 364 Mass. 454, 457 [1973]); *Massachusetts Gen. Hosp.* v. *Rate Setting Comm'n*, 359 Mass. 157, 166 [1971]). The commission agrees that the plaintiffs may maintain this action pursuant to G. L. c. 30A, § 7.

In any challenge to a regulation, the plaintiff has the burden of showing that the regulation is invalid or illegal. See *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 851 (1977). Where the plaintiff asserts that a regulation is illegal on the basis of particular facts, the factual showing must be made in the judicial proceeding itself. *Grocery Mfrs. of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 81 (1979). Thus, in the absence of a contrary statutory direction, a court reviewing a regulation is not concerned with whether there was substantial evidence in a record before the agency, but rather it must consider whether, based solely on the record made in court, the adoption of the agency regulation was illegal, arbitrary, or capricious. See *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 768, 777 (1980); *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 293 (1979). Contrast *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 371 Mass. 67, 80 (1976), a case involving an adjudicatory

proceeding. We accord to a regulation, including a rate regulation, the same deference we extend to a statute. *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, *supra* at 293-294. Barring a specific statutory requirement, an agency is not obliged to provide a statement of reasons in support of its adoption of a regulation. See *Purity Supreme, Inc.* v. *Attorney Gen.*, *supra* at 781.

We disagree in part with the Superior Court judge, who concluded that the question of the propriety of the methods and procedures used by the commission in setting the dispensing fee was beyond the proper scope of judicial review of the regulation. His conclusion was wrong as to the plaintiffs' procedural challenges to the regulation but correct as to their substantive challenges. As we have just indicated, a challenge to a general regulation may be brought directly to a court pursuant to G. L. c. 30A, § 7, and G. L. c. 231A. Thus, the judge's conclusion that he could not consider procedural objections to the methods and procedures used by the commission in adopting the regulation is not consistent with established authority. As to the plaintiffs' substantive challenge to the dispensing fee, however, the judge was basically correct because the lawfulness of the level of the dispensing fee is not to be determined on the basis of the propriety of "the methods and procedures used by the commission." Instead, the lawfulness of the rate level is to be determined on the basis of a record made in the judicial proceeding. The judge did not engage in any analysis of either the procedural or the substantive challenge to the dispensing fee regulation, except to rule that the regulation was facially valid.

Because the judge did not consider the plaintiffs' challenges based either on procedural or on substantive grounds, except to determine that the regulation was not "void on its face," we have no findings of fact on various contested issues. On a review of the record, we have concluded that we can deal adequately with the various challenges raised by the plaintiffs. Most significant facts are not in dispute, and in each area in which we lack findings, we conclude

that the evidence most favorable to the plaintiffs does not warrant a decision in their favor.

1. *Procedural objections.* We turn first to the plaintiffs' arguments that the commission failed to adhere to certain procedural requirements for the adoption of the regulation and that, therefore, the regulation is invalid. We shall then consider the plaintiffs' claims that the dispensing fee is defective substantively, even if it was properly adopted.

(a) The plaintiffs argue that the regulation is invalid because the commission failed to determine rates annually as required by G. L. c. 6A, § 32, third par. It is clear that the rates in effect prior to the 1978 rates (those involved in this case) were promulgated in 1975, and, therefore, the commission did not determine rates "at least as often as annually." See G. L. c. 6A, § 32, as amended through St. 1979, c. 675, § 1.[6] Moreover, the commission was required to establish regulations consistent "with the principles of reimbursement for provider costs in effect from time to time under Titles XVIII and XIX of the Social Security Act" (G. L. c. 6A, § 32, tenth par.). Also, Federal Medicaid requirements obliged the State to conduct a complete survey of pharmacy costs "at least once every three years, as long as inflation factors are considered every year." Department of Health, Education, and Welfare Medical Assistance Manual (Prepublication draft, June, 1977) at 6-160-32. Although the plaintiffs might have been entitled to relief at some earlier time against the commission's failure to act to determine new rates annually, that statutory violation, assuming it to be one, has no bearing on the lawfulness of the adoption of the 1978 regulation.[7] Alleged deficien-

---

[6] Statute 1981, c. 776, § 1, amended § 6A to provide in its third paragraph that "at least as often as annually, for institutional providers, and at least as often as biennially, for non-institutional providers" the commission should determine rates to be paid by each governmental unit to providers of health care services.

[7] The plaintiffs apparently raised this issue first in a posttrial brief. We assume, for the purpose of decision, that the argument was seasonable, although the commission points out that, had the point been raised

cies in the rates in effect prior to the 1978 rate are not the subject of this action, and any past deficiencies could not properly have been made up retroactively in the newly determined rates.

(b) The plaintiffs next challenge the commission's failure to "establish by regulation those expenses treated as business deductions under the Internal Revenue Code which shall be included as allowable operating expenses in determining rates of reimbursement." G. L. c. 6A, § 32, fourth par. Although the commission had not promulgated such a regulation for pharmacies, the plaintiffs have not been prejudiced by that omission. The statute indicates that business expenses allowed as deductions for Federal income tax purposes may be included as operating expenses. Each pharmacy was aware of its own deductible expenses. There was thus no surprise as to what expenses might be considered in determining rates of reimbursement. Moreover, a survey of Massachusetts pharmacies, developed with the participation of the association and distributed before the regulation was issued, gave adequate notice of the expenses that the commission might consider in establishing the rate of reimbursement. In the absence of a showing of prejudice because of the commission's failure to issue a regulation identifying allowable operating expenses, the plaintiffs have failed to present a case for the invalidation of the dispensing fee contained in the 1978 regulation. See *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 1)*, 374 Mass. 547, 551, appeal dismissed, 439 U.S. 803 (1978) (adjudicatory proceeding). The absence of prejudice is particularly apparent where we are considering an industry-wide fee, whose determination is not

---

earlier, it could have demonstrated that the delay in promulgating the 1978 regulation was due in part to efforts to accommodate the plaintiffs' concerns.

We need not decide the separate question whether the statutory language concerning annual rate determinations is mandatory or directory.

directly related to the operating costs of any particular pharmacy.[8]

(c) Next, the plaintiffs challenge the regulation because one of the two incumbent commissioners (there was a vacancy in the chairmanship) did not attend the afternoon portion of the public hearing on the regulation. It is agreed that Commissioner Stover did not return to the public hearing after the luncheon recess and did not read a transcript of the proceedings (because none was available) before the regulation was issued. The State Administrative Procedure Act does not prescribe procedures for participation by agency members in hearings and decisions concerning the adoption of a regulation. See G. L. c. 30A, § 2, fifth par. Nor is there any statute stating specific procedures for the commission to follow in regulatory proceedings. The situation is different in adjudicatory proceedings (G. L. c. 30A, § 11), but, even there, attendance by a majority of the officials of the agency is not required and a majority need not read the evidence, if certain other procedural safeguards are followed (see G. L. c. 30A, § 11 [7]). In the absence of any statutory requirement that a majority of the members of an agency should either hear or read the testimony at a public hearing concerning a proposed regulation, we decline to impose such a general requirement. See *Grocery Mfrs. of America, Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 79-80 (1979). Every rate determined by the commission, including rates for each individual provider in the Commonwealth, is deemed to be a regulation. G. L. c. 6A, § 32, tenth par. We believe the Legislature did not intend to require that a majority of the commission hear or read the presentation made at each public hearing concerning pro-

---

[8] The plaintiffs do not demonstrate that any pharmacy raised this objection during the months when the regulation was under consideration by the commission. A party aware of an apparent defect in agency procedures should not normally be allowed to sit by silently and then to complain successfully of that error on judicial review. See *Metropolitan Property & Liab. Ins. Co.* v. *Commissioner of Ins.*, 382 Mass. 514, 524 (1981); *American Hoechest Corp.* v. *Department of Pub. Utils.*, 379 Mass. 408, 414 (1980).

vider rates. To the extent that *Farrell* v. *Mayor of Revere*, 306 Mass. 221, 225 (1940), may be inconsistent with our conclusion, we decline to follow it.[9]

Although, in the absence of a statutory requirement, we would not impose a general requirement that a certain number of agency members must hear the testimony or read the transcript of a regulatory proceeding, affected parties are entitled, nevertheless, to procedural due process. The plaintiffs do not make out a case, however, that their constitutional rights were infringed. The commission dealt with this issue over a considerable period of time. The pharmacies presented detailed position papers and correspondence. Commissioner Stover heard presentations at the hearing on behalf of pharmacies.[10] The plaintiffs have failed to show that they were prejudiced in any way or were denied procedural fairness because Commissioner Stover did not attend the afternoon session of the public hearing.

(d) The plaintiffs argue that the regulation was invalid because the commission acted in response to ex parte communications from officials of the Department of Public Welfare. In early 1978, the commission issued a proposed regulation providing for a dispensing fee of $2.90 for those who had answered the commission's survey and a dispensing fee of $2.15 for those pharmacies that had not. A hearing was scheduled for May 26, 1978. Early in May, an as-

---

[9] The *Farrell* case involved a proceeding in which the city charter entitled Farrell, the city auditor, to a public hearing before the mayor and the city council concerning her removal from office by the mayor. The council had no control over the removal decision even after the required hearing. This court held that a hearing attended by only two of nine council members was invalid and that attendance by a majority of the council was necessary for a proper proceeding. In the case before us, the governing statute requires a public hearing but does not explicitly state that the hearing must be before the commission or any member of the commission. G. L. c. 6A, § 32.

[10] He testified that he read the exhibits and attachments and that he was informed by the commission's staff of the afternoon's events. In the absence of a finding by the judge that Commissioner Stover did read the relevant documents and that he was informed by the commission staff, we do not rely on this testimony in reaching our conclusion.

sistant commissioner of the Department of Public Welfare (DPW) wrote privately to the commission objecting to the proposed plan for dispensing fees, particularly urging a single fee of between $2.40 and $2.50 and a postponement of the public hearing. Each commissioner read the communication. Commissioner Stover attended a private meeting with the Secretary of Human Services and the DPW assistant commissioner at which the assistant commissioner reiterated his position. The commissioners canceled the public hearing and later proposed a single dispensing fee. There was no evidence that the dispensing fee ultimately determined was not the product of the judgment of the commissioners. The pharmacists themselves supported the assistant DPW commissioner's position by also opposing the split fee proposal. In adopting a fee of $2.70, the commission rejected the suggestion of the assistant DPW commissioner of a fee below $2.50. There was extensive evidence of private communications with the commission by pharmacies and persons acting on behalf of pharmacies.

The plaintiffs argue that once a public hearing has been announced concerning the adoption of a regulation, all ex parte communications with the agency members who will participate in the decision must cease and that, if there are such communications, the regulation must be invalidated on the objection of a person who was or may have been aggrieved by the ex parte contact. They further argue that, even if a per se rule is not adopted, the ex parte communications did in fact affect the commission's decision.

We are dealing here with a regulatory, and not an adjudicatory, proceeding. Although the Legislature has prescribed procedures for dealing with the disclosure of evidence that an agency wishes to consider in an adjudicatory proceeding (G. L. c. 30A, § 11 [4] and [5]), there is no such requirement as to a regulatory proceeding.[11] While we

---

[11] The State Administrative Procedure Act lays out a boundary line between adjudicatory and regulatory proceedings (G. L. c. 30A, § 1). In practical application, however, the line between the concepts is not pre-

would recognize self-imposed procedural rules adopted by an agency and those prescribed by statute, courts should be reluctant to impose any additional requirements. See *Grocery Mfrs. of America, Inc.* v. *Department of Pub. Health,* 379 Mass. at 80; *Vermont Yankee Nuclear Power Corp.* v. *Natural Resources Defense Council, Inc.,* 435 U.S. 519, 524 (1978).

There are, as we have just noted above, constitutional standards of administrative due process even in regulatory proceedings. In *Massachusetts Gen. Hosp.* v. *Commissioner of Administration,* 353 Mass. 369, 374-375 (1967), we held that new rate regulations could not be promulgated without holding a new public hearing as required by statute. We also said that where the commissioner obtained new data after the issuance of existing regulations, those new data would have to be disclosed for public comment as evidence the commissioner planned to consider in issuing new regulations. *Id.* at 375.

The case before us does not warrant the invalidation of the regulation on procedural due process grounds. There is not the least indication that the commission arbitrarily and capriciously abdicated its responsibility to another State official, or that the commission was subjected to improper pressure. Nor is there any suggestion of procedural unfairness to the plaintiffs. The commission did abandon its "split-fee" proposal in favor of a single dispensing fee, but that is what the plaintiffs wanted. The commission did not accept the fee level recommended to it by the assistant DPW commissioner. It adopted a higher fee. The ex parte information was in the nature of argument and not undisclosed

cise. See *Cambridge Elec. Light Co.* v. *Department of Pub. Utils.,* 363 Mass. 474, 486 (1973). In proceedings having aspects of both regulation and adjudication, the Legislature on occasion has imposed an obligation on the agency to decide the matter on the record made at a public hearing. See, e.g., G. L. c. 175, § 113B; G. L. c. 176A, § 5. Where that is so, the decision maker commits error in relying on evidence not in the record. *American Employers' Ins. Co.* v. *Commissioner of Ins.,* 298 Mass. 161, 166-167 (1937). There is no requirement of decision making on an agency record in the case before us.

fact.   Representatives of pharmacies themselves participated in ex parte agency contact.   In the legislative process by which the commission is allowed by statute to act, we find no denial of procedural due process.[12]

Better practice might well require an agency to disclose views expressed to it by other State officials concerning proposed regulations.   But in the absence of a showing of (a) an abdication of responsibility to another official, (b) a response

---

[12] The plaintiffs rely on principles expressed in certain opinions of the United States Court of Appeals for the District of Columbia Circuit.   In *Sangamon Valley Television Corp.* v. *United States,* 269 F.2d 221 (D.C. Cir. 1959), the court vacated an order assigning certain television channels to particular locales.   A person interested in the proceedings before the Federal Communications Commission had spoken privately with each commissioner expressing his interests, had had every commissioner as a luncheon guest, and had given turkeys to each commissioner.   Although the proceeding was a rulemaking one, the court described the issue before the commission as involving "resolution of conflicting private claims to a valuable privilege."   *Id.* at 224.   A commission rule barred comments after a cutoff date and apparently certain private communications occurred after that date.   The Court of Appeals for the District of Columbia Circuit followed the *Sangamon* opinion in *Home Box Office, Inc.* v. *FCC,* 567 F.2d 9, 51-59 (D.C. Cir.), cert. denied, 434 U.S. 829 (1977), and required public disclosure of all ex parte communications made to potentially involved agency officials or employees and received after issuance of a formal notice of rulemaking.   A different panel of that court has said that the principle of the *Home Box Office* case applies only where the rulemaking proceedings involve competing claims to a valuable privilege.   *Action for Children's Television* v. *FCC,* 564 F.2d 458, 477 (D.C. Cir. 1977).   More recently, a panel of that court noted that "[i]f an agency official is to be effective he must engage in debate and discussion about policy matters before him."   *Association of Nat'l Advertisers, Inc.* v. *FTC,* 627 F.2d 1151, 1169 (D.C. Cir. 1979), cert. denied, 447 U.S. 921 (1980).   See also *Sierra Club* v. *Costle,* 657 F.2d 298, 400-402 (D.C. Cir. 1981) (undisclosed ex parte communications are appropriate except where statute requires disclosure on the docket).

The views expressed in various opinions of the Court of Appeals for the District of Columbia Circuit may not be wholly reconcilable, and the idea of excluding ex parte communications has not caught on substantially elsewhere.   Some of those views have been criticized as not being attuned to the role of an agency in rulemaking and as being inconsistent with Congress's determination in the Administrative Procedure Act to restrict ex parte communications only in "on the record" proceedings.   1 K.C. Davis, Administrative Law § 6:18, at 533-537 (1978 & 1982 Supp.).

to inappropriate pressure from another official, or (c) the denial of essential fairness, we leave the matter to the agency and the Legislature.

2. *Substantive objections.* We come then to the plaintiffs' argument that the dispensing fee is substantively defective. They argue that the rate is "arbitrary, inadequate and unreasonable," that it is confiscatory, and that it is inconsistent with Federal regulatory standards. The commission has not argued that the plaintiffs may not properly challenge the level of the dispensing fee, a fee of Statewide application, in a proceeding brought under G. L. c. 30A, § 7, and G. L. c. 231A. The situation would be different if the challenge were made by an individual provider to a specific rate for it, because that provider would have a clear administrative remedy by appeal to the division, pursuant to G. L. c. 6A, § 36.

The plaintiffs' challenge to the level of the dispensing fee rests in large measure on an attack on the method by which the commission apparently arrived at the dispensing fee. But, because this is a regulatory proceeding, the process the commission followed, even if flawed, is largely irrelevant. Although there is the possibility that an agency may have acted in an arbitrary or whimsical manner in adopting a particular rate, the agency need not have made a record to support its conclusion, and asserted defects in its reasoning cannot alone be the basis of a successful challenge. Barring capricious or arbitrary conduct, any challenge must affirmatively demonstrate the inadequacy of the rate in the judicial proceeding. See discussion and cases cited at 126-127 above.

The plaintiffs raised no objection to the commission's adoption of a single Statewide dispensing fee. Thus, their challenge must be based on a demonstration that the dispensing fee failed to meet some general statutory standard. That standard is not explicitly stated in the governing statute (G. L. c. 6A, § 32). However, we think that standard is implicit in the context of the aims of the Medicaid program, and that the rate of reimbursement for pharmacies must

only be sufficient to attract enough participating pharmacies to the Medicaid program to assure that Medicaid recipients will have sufficient access to participating pharmacies to meet their reasonable needs. See *Murphy Nursing Home, Inc.* v. *Rate Setting Comm'n*, 364 Mass. 454, 462 (1973). The fact that the rate to be paid under the regulation is shown to be inadequate for an individual pharmacy cannot support a successful attack on a general rate regulation. See *Greenleaf Fin. Co.* v. *Small Loans Regulatory Bd.*, 377 Mass. 282, 301-302 (1979). The burden on the plaintiffs is a heavy one and, as a practical matter, proof of a case may not be possible unless a rate regulation has been in operation for a period of time and its effects have been demonstrated in its actual operation. For example, there was no showing that the number of participating pharmacies was inadequate or declining significantly under the lower rates in effect pursuant to the next prior rate regulation. In any event, the record in this case does not warrant a finding that the rate regulation failed to meet the statutory standard.

As to the claim of confiscation, the answer is the same. Even if we assume, without deciding, that a pharmacy which is a voluntary participant in the Medicaid program may raise a constitutional challenge to the rate,[13] the record

---

[13] There is a substantial question whether a pharmacy or other provider has any constitutional claim that a rate of reimbursement is confiscatory. See *Murphy Nursing Home, Inc.* v. *Rate Setting Comm'n*, 364 Mass. 454, 461 (1973); *Massachusetts Gen. Hosp.* v. *Cambridge*, 347 Mass. 519, 522 (1964). See also *Green* v. *Cashman*, 605 F.2d 945, 946 (6th Cir. 1979). A pharmacy's participation in the Medicaid program is voluntary and involves only a portion of its business, even only a portion of its drug business. However, if there were a showing that a Statewide rate would produce an industry-wide aggregate loss, perhaps an individual pharmacy, also showing loss as to itself, could properly assert confiscation. See *Insurance Rating Bd.* v. *Commissioner of Ins.*, 359 Mass. 111, 115 (1971); *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.*, 358 Mass. 272, 280-281 (1970).

Because the level at which a rate would be confiscatory would not be above the level of the rate mandated by G. L. c. 6A, § 32, there would be no reason to rely on a constitutional challenge to the rate level, except for the independent judicial review that would be accorded a claim of confiscation relying on the Constitution of the Commonwealth. See *New England Tel. & Tel. Co.* v. *Department of Pub. Utils.*, 371 Mass. 67, 71-72 (1976); *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.*, *supra* at 277-278.

in this case does not show confiscation. Because of the purposes of the Medicaid reimbursement program, it is not clear what level of rates, if any, might be characterized as confiscatory, but certainly rates which meet the statutory standard would not be confiscatory. Thus, the plaintiffs' failure of proof on the statutory standard means that they have not made the case for confiscation.

We briefly dispose of the plaintiffs' argument that the commission failed to comply with Federal regulatory requirements. The plaintiffs have not shown any such failure. The commission complied with the Federal requirement (42 C.F.R. § 450.30 [b] [2] [i][1977]) that "[i]n establishing the dispensing fee, States should take into account the results of surveys of costs of pharmacy operation." There was such a survey, and the commission did take the survey into account. We have considered the plaintiffs' other challenges based on asserted violations of Federal regulatory requirements and find them without merit.

### The Appeals from the Division of Hearings Officers

Both the pharmacies and the commission have appealed from the judgment entered in the action brought by the pharmacies to contest the division's dismissal of their purported class action challenge to the dispensing fee. The division, acting through an individual hearing· officer, dismissed the proceeding on the ground that a class action to challenge a Statewide rate could not be maintained. The judge agreed, but he concluded that the proceeding should not have been dismissed as to the named pharmacies and ordered that an adjudicatory proceeding under G. L. c. 6A, § 36, be held on the adequacy of the rate for each named plaintiff. The judge further directed that, in adjudicating the named pharmacies' challenge to the rate, the division should "consider all factors relating to the promulgation of the rates, including the appropriateness and effectiveness of the methods and procedures used by the Rate Setting Commission in establishing the rate." He added that the division should "determine the adequate, fair and reasonable

rate or reimbursement for each provider." The commission argues that we should let the division decide for itself which, if any, of the various challenges to the rate regulation it should consider. The commission thus argues that we should modify the judge's direction as to what the division must do on remand.[14]

We agree with the judge, the commission, and the division that the division has no authority to consider a class action challenging a rate regulation of general application. We discuss subsequently whether the division has any authority at all to consider a challenge to a rate of general application.[15] For the moment, we are concerned with whether the division was in error in concluding that a class action was not authorized on appeal to the division. The division's hearing officer concluded, we think correctly, that G. L. c. 6A, § 36, authorizes appeals only by "individual providers" and not by a class of providers. See *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 176-177 (1978). The division had no rule permitting class actions, and a general statement in its Rules of Practice that "the Division will be guided by the Massachusetts Rules of Civil Procedure" did not incorporate Mass. R. Civ. P. 23, 365 Mass. 767 (1974), concerning class actions, into the division's rules. In the absence of any statutory authorization for class actions before the division and in the absence of any rule of the division authorizing class actions, we conclude that the class action aspect of the pharmacies' appeal to the division was properly dismissed.

We come then to consider the role, if any, the division has in an individual provider's challenge to a rate regulation of general application. We have already stated that a declara-

---

[14] The division has not appealed, and its position is not expressed in the joint brief of the commission and the division.

[15] The hearing officer who considered the commission's motion to dismiss concluded that the division did have authority to consider the adequacy of the rate but not the commission's "methodology."

tory judgment proceeding under G. L. c. 30A, § 7, and G. L. c. 231A, may be brought to consider procedural challenges to a regulation of general application. See 126 above. We think the commission was correct in deciding that a substantive challenge to a rate regulation of general applicability may be brought pursuant to G. L. c. 30A, § 7, and G. L. c. 231A. See *Massachusetts Gen. Hosp.* v. *Rate Setting Comm'n*, 359 Mass. 157, 163-165 (1971).[16] By contrast, a regulation setting forth a particular rate for an individual provider may be challenged initially only by agency (i.e., division) review. *Id.* at 164.

In light of the availability of a direct judicial challenge to all aspects of a rate regulation of general applicability, what role is there for an administrative review by the division? In a challenge to a rate for an individual provider, this court has allowed the provider to attack the agency's failure to comply with statutory requirements for the promulgation of general regulations pursuant to which the provider's particular rate was determined. See *Palm Manor Nursing Home, Inc.* v. *Rate Setting Comm'n*, 359 Mass. 652, 655 (1971). The problem in the case before us arises from the fact that G. L. c. 6A, §§ 32 and 36, were written for individual provider appeals from commission regulations setting forth a particular rate or rates for that provider alone. Review of an industry-wide rate seems not to be contemplated in the process set forth by G. L. c. 6A, § 32.

Literally, however, the statute permits an aggrieved provider to appeal to the division from any rate determination of the commission.[17] But the standard expressed for the division's review of a commission rate determination has

---

[16] The *Massachusetts Gen. Hosp.* case involved not a rate of general applicability but a regulation of general applicability by which individual provider rates would be determined. It is thus not directly in point.

[17] "[A]ny person aggrieved by any rate determination made under this section shall have a right of appeal as provided under section thirty-six." G. L. c. 6A, § 32, inserted by St. 1973, c. 1229, § 2. Among other things, § 36 authorizes any person aggrieved by a final rate to appeal to the Division of Hearings Officers established by G. L. c. 7, § 4H.

little bearing on the propriety of a rate regulation of general applicability. The division's review is supposed to focus (but not exclusively) on the aggrieved provider's costs and the reasonableness of the rate for the provider.[18] There is no suggestion that the division should consider whether the rate meets the standard for an industry-wide rate. Nor, as we have held, does the division have any procedure to permit a class action challenge to a rate regulation of general applicability. In short, the statutory and administrative pattern suggests that the division may have no role in a review of a challenge to a regulation prescribing a rate of general application.

In order to decide the question raised by the commission's appeal we need not resolve this point, which may warrant legislative consideration. All we need say is that the division on remand of this case should not be directed to consider "all factors relating to the promulgation of the rates" until it shall have determined whether the question is an appropriate one for its consideration. We have resolved procedural and substantive challenges to the regulation against the pharmacies in the declaratory judgment action. As to parties bound by the judgment to be entered in that action, the procedural objections appear to have been conclusively decided. As to substantive challenges to the general rate regulation, the division may conclude that it has no statutory function to perform or that, if it has any such function, some or all of the substantive issues have been conclusively decided against the named pharmacies which are parties to the declaratory judgment action.

## Conclusion

The judgment in the declaratory judgment action dismissing the complaint is vacated and a judgment shall be

---

[18] "On appeal, the rate determined for any provider of services shall be adequate, fair and reasonable for such provider, based, among other things, on the costs of such provider." G. L. c. 6A, § 36, inserted by St. 1973, c. 1229, § 2.

entered declaring that, on the record before the court, the rate regulation (114.3 Code Mass. Regs. 31.00 [1978]) is valid.

In the action appealing the division's dismissal of the pharmacies' purported class action, the judgment is vacated, and judgment shall be entered affirming the division's dismissal of the class action aspect of the proceeding and remanding the matter to the Division of Hearings Officers, only, however, as to the named aggrieved pharmacies or pharmacists who appealed to the division, for further consideration in light of this opinion.

*So ordered.*